# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

```
------------------------------------------------------------------X
                                                    :
KILWINS CHOCOLATES FRANCHISE, INC.,                 :
a Michigan corporation                              :        COMPLAINT
                                                    :
      Plaintiff,                                    :
                                                    :        Case No.
vs.                                                 :
                                                    :
                                                    :
FATE, INC., d/b/a Fate Ventures, Inc.,              :
a Florida corporation,                              :
                                                    :
         and                                        :
                                                    :
STEPHEN D. SMITH                                    :
                                                    :
      Defendants.                                   :
                                                    :
------------------------------------------------------------------X
```

The plaintiff Kilwins Chocolates Franchise, Inc. ("KCF"), for its Complaint against the defendants Fate, Inc., d/b/a Fate Ventures, Inc. ("Fate") and Stephen D. Smith ("Smith"), alleges as follows:

## PRELIMINARY STATEMENT

1.     This action arises out of the defendants' continued use of KCF's federally registered mark KILWINS after the termination of their KILWINS Franchise Agreement, and the breach of the post-termination obligations contained in their KILWINS Franchise Agreement. After the defendants permitted their

KILWINS Franchise Agreement to expire, they, or someone acting in privity with them, continued to operate their formerly franchised KILWINS shop as essentially a KILWINS knockoff, continued to use the KILWINS name and marks as well as the confidential recipes and methods of the KILWINS system. and refused to permit KILWINS to take possession of the equipment and other assets of their formerly franchised KILWINS shop despite KCF's contractual right to do so. KCF is entitled to preliminary and permanent injunctive relief, damages, declaratory relief, and attorneys' fees.

## JURISDICTION AND VENUE

2.      This is a civil action arising under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. and the contracts between the parties.

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1367.

4.      Jurisdiction exists under §§ 1331 and 1367 because this case arises under 15 U.S. C. §§ 1501 *et seq*. and the Court has supplemental jurisdiction over state law claims related to the federal claims.

5.      Jurisdiction exists under § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. KCF is a corporation organized under the laws of Michigan with its principal place of business in Petoskey, Michigan. On

information and belief, the defendant Fate is a corporation organized under the laws of Florida with its principal place of business in Melbourne, Florida. The defendant Smith is a citizen of Indiana.

6.     Personal jurisdiction exists over the defendants, and venue is proper in this Court. Pursuant to Section 23 of their KILWINS Franchise Agreement, the defendants agreed to submit and consent to jurisdiction and venue in the district in which KCF's principal place of business is located at the time suit is filed. KCF's principal place of business is located in this district. Personal jurisdiction and venue are also proper under the Michigan long-arm statute (Mich. Comp. Laws §§ 600.705, 600.715) and 28 U.S.C. § 1391.

## THE KILWINS SYSTEM

7.     KCF is the franchisor of the KILWINS franchise system. KCF owns the federally registered mark "KILWINS," U.S. Reg. No. 1276447, which is incontestable pursuant to 15 U.S.C. § 1065 (the "KILWINS Mark"). KCF licenses others to use the mark KILWINS and operate KILWINS shops. KCF (including its predecessor) and its licensees have operated KILWINS shops since 1981. There are now 102 KILWINS shops throughout the country.

8.     KILWINS shops specialize in the sale of fudge, handmade chocolates, ice cream, and other confections. KILWINS shops are operated in accordance with KCF's detailed standards and specifications. KCF licenses to franchisees the

KILWINS mark, as well as the trade dress, recipes, methods, and specifications that KCF has developed ("the KILWINS System").

9.      KILWINS shops and products are distinctive. The recipes, specifications, trade dress, and other aspects of the KILWINS System are the product of substantial investment by KCF, have developed substantial goodwill, and have immeasurable value to KCF.

10.     The KILWINS Mark has become synonymous in the minds of consumers with the high quality products and services that are offered at legitimate, licensed KILWINS shops. The KILWINS Mark has achieved secondary meaning.

## THE FRANCHISE RELATIONSHIP BETWEEN THE PARTIES

11.     On or about August 4, 2005, KCF and Fate entered into a KILWINS Franchise Agreement (the "Franchise Agreement"). A copy of the Franchise Agreement is Exhibit 1 to the Complaint.

12.     In the Franchise Agreement, KCF agreed to license to Fate the KILWINS Mark and the KILWINS System for the operation of a KILWINS shop at 906 East New Haven Avenue, Melbourne, FL 32901-5435 (the "East New Haven store"). (The Franchise Agreement incorrectly states the address as "904 East Haven Avenue").

13.     Section 2.1 of the Franchise Agreement granted Fate a ten year term, with an option to renew for an additional ten-year term.

14.     In Section 4.2 of the Franchise Agreement, Fate agreed to pay KCF a monthly ongoing royalty of 5% of Gross Sales (as defined in the Franchise Agreement) for the term of the Franchise Agreement.

15.     In Section 10.2 of the Franchise Agreement, Fate agreed to pay KCF a monthly Advertising Contribution of 4% of Gross Sales (as defined in the Franchise Agreement) for the term of the Franchise Agreement.

16.     In Section 4.3 of the Franchise Agreement, Fate agreed to pay KCF interest on all past due amounts at the rate of the lower of 1.5% per month or the maximum rate permitted by law.

17.     In Section 3.4 of the Franchise Agreement, KCF agreed to provide to Fate its confidential operating manual, which contains proprietary recipes and methods for making fudge, caramel apples, candied popcorn and other products that are sold by KILWINS shops.

18.     Section 8.1 of the Franchise Agreement required Fate to keep the KILWINS recipes, methods, and knowhow confidential, during the term of the Franchise Agreement and thereafter.

19.     In Section 12.4.1, Fate agreed that it would not encumber any material asset of Fate or its KILWINS shop without the prior written consent of KCF.

20.     Section 14, titled "Obligations Upon Termination Or Expiration," sets forth a number of requirements on the termination or expiration of the Franchise Agreement.  Section 14 provides, in part:

> Upon termination or expiration of this Agreement, all rights granted hereunder to Franchisee shall forthwith terminate, and:
>
> 14.1     Franchisee shall immediately cease to operate the business franchised under this Agreement, and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former franchisee of Franchisor.
>
> 14.2     Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures and techniques associated with the System, the Proprietary Mark "Kilwin's," and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System.  In particular, Franchisee shall cease to use, without limitation, all signs, advertising materials, displays, stationery, forms or any other articles which display the Proprietary Marks. . . .
>
> 14.4     Franchisee shall, at Franchisor's option, assign to Franchisor any interest which Franchisee has in the lease or sublease for ground upon which the Shoppe is operated and for the building in which the Shoppe is operated.
>
> 14.4.1   If Franchisor does not elect . . . to exercise its option to acquire, or to acquire the lease or sublease for the premises of the Shoppe, Franchisee shall make such modifications or alterations to the premises operated hereunder (including, without limitation, the changing of the telephone number) immediately upon termination or expiration of this Agreement as may be necessary to distinguish the appearance of said premises

from that of other Shoppes under the System, and shall make such specific additional changes thereto as Franchisor may reasonably request for that purpose.

14.4.2 If Franchisee fails or refuses to comply with the requirements of this Section 14.4, Franchisor shall have the right to enter upon the premises of the Shoppe, without being guilty of trespass or any other tort, for the purpose of making or causing to be made such changes as may be required, at the expense of Franchisee, which expense Franchisee agrees to pay upon demand.

14.5 Franchisee agrees, if it continues to operate or subsequently begins to operate any other business, not to use any reproduction, counterfeit, copy or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake, or deception, or which is likely to dilute Franchisor's rights in and to the Proprietary Marks, and further agrees not to utilize any designation of origin, description, trademark, service mark, or representation which suggests or represents a present or past association or connection with Franchisor, the System or the Proprietary Marks. . . .

14.8 Franchisee shall immediately deliver to Franchisor the Manual, and all other manuals, records and instructions containing confidential information (including without limitation any copies thereof, even if such copies were made in violation of this Agreement), all of which are acknowledged to be the property of the Franchisor.

14.9 Franchisor shall have the option, to be exercised within thirty days (30) days after termination or default under prime lease, to purchase from Franchise any or all of the furnishings, equipment, signs, fixtures, supplies or inventory of Franchisee related to the operation of the Shoppe, at Franchisee's cost or fair market value. The cost shall be determined based upon a

five year straight-line depreciation of original costs. For equipment that is five or more years old, the parties agree that fair market value shall be deemed to be ten percent (10%) of the equipment's original cost. If Franchisor elects to exercise any option to purchase herein provided, it shall have the right to set off all amounts due from Franchisee.

21. Section 15 of the Franchise Agreement contains additional covenants.

Sections 15.3 provides in part:

Franchisee covenants that, except otherwise approved in writing by Franchisor, Franchisee shall not, during the term of this Agreement, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person . . . own, maintain, operate, engage in, or have any interest in any business which is the same as or similar to the Shoppe; and shall not for a continuous uninterrupted period of twelve (12) months from the date of: . . . (b) expiration or termination of this Agreement . . . either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any persons . . . own, maintain, operate, engage in, or have any interest in any business which is the same as or similar to the Shoppe and which business is, or is intended to be, located within a five (5) mile radius of the Approved Location or within a five-mile radius of any Shoppe then-operating under the System.

22. Section 15. 9 provides:

Franchisee acknowledges that Franchisee's violation of the terms of this Section 15 would result in irreparable injury to Franchisor for which no adequate remedy at law may be available, and Franchisee accordingly consents to the issuance of an injunction prohibiting any conduct by Franchisee in violation of the terms of this Section 15.

23.     Smith executed a personal guarantee of Fate's obligations under the Franchise Agreement, specifically including the confidentiality, post-termination, and non-compete provisions referenced above.

### FATE'S OPERATION OF ADDITIONAL KILWINS SHOPS

24.     In 2007, Fate opened an additional "satellite" KILWINS shop at the Crowne Plaza hotel in Melbourne, FL (the "Crowne Plaza store"), under the terms of the Franchise Agreement and a July 31, 2007 letter agreement.

25.     Under the July 31, 2007 letter agreement, KCF agreed to lend the equipment for the Crowne Plaza location to Fate (the "Crowne Plaza equipment"), and Fate agreed to pay the sum of $3,200 to KCF on August 8, 2015 for the Crowne Plaza equipment if the Crowne Plaza location was still open for business.

26.     The Crowne Plaza location remained open for more than one year. Indeed, it remained open for the balance of the term of the Franchise Agreement. Fate did not pay KCF for the Crowne Plaza equipment on August 8, 2015.  Fate did not pay KCF for the Crowne Plaza equipment at any time prior to August 4, 2015.

27.     Fate also opened a satellite KILWINS shop at Patrick Air Force base (the "Patrick AFB store") in 2008, under the terms of the Franchise Agreement and a July 27, 2008 letter agreement.  The Patrick AFB location closed in 2009.

## THE EXPIRATION OF THE FRANCHISE AGREEMENT

28.     The ten-year term of the Franchise Agreement expired on August 4, 2015.  Fate did not exercise its option to renew.

29.     As of August 4, 2015, Fate was in arrears on its obligation to pay royalties and Advertising Contributions to KCF in the amount of $132,580.26, exclusive of interest, as follows: (a) $98,727.39 in royalties at the East New Haven store; (b) $11,614.55 in Advertising Contributions at the East New Haven store; (c) $18,253.18 in royalties for the Crowne Plaza store; (d) $2,344.58 in Advertising Contributions for the Crowne Plaza store; and (e) $1,640.56 in royalties for the Patrick AFB store.

30.     As of August 4, 2015, Fate owed KCF a total of $135,780.26 in unpaid royalties and Advertising Contributions (exclusive of interest) and for the Crowne Plaza equipment.

31.     After Fate communicated its decision not to renew its Franchise Agreement, KCF made demand for the past due amounts, indicated its intention to exercise its right to purchase the equipment and furnishings in the East New Haven store, and sent Fate a draft Non-Renewal and Release Agreement.

32.     Fate failed and refused to execute the Non-Renewal and Release Agreement.

33.    On or about August 12, 2015, Fate sent KCF a cashier's check in the amount of $135,780.26.  That amount was the amount due to KCF under the terms of the Franchise Agreement for past-due royalties and Advertising Contributions and for the Crowne Plaza equipment.

34.    Fate also sent KCF a draft agreement but its terms were unacceptable to KCF and KCF did not execute it.

### KCF'S EXERCISE OF ITS RIGHT TO PURCHASE FURNISHINGS AND EQUIPMENT AND THE DEFENDANTS' REFUSAL TO COMPLY

35.    By letter dated August 28, 2015, KCF, by counsel, exercised its right, pursuant to Section 14.9 of the Franchise Agreement (quoted at paragraph 20 above).  A copy of the August 28, 2015 letter accompanies the Complaint as Exhibit 2.

36.    By email dated September 8, 2015, KCF informed Fate that it would be sending someone to pick up the equipment and furnishings on September 16, 2015.  A copy of the September 8, 2015 email accompanies the Complaint as Exhibit 3.

37.    Fate responded, by counsel via voicemail, on September 11, 2015, that it would not turn over the equipment and furnishings.  Fate's counsel stated her belief (a) that KCF's acceptance of the check constituted KCF's agreement to the terms of Fate's proposed agreement, which included a release of the right to purchase the equipment and furnishings, and (b) that KCF had subordinate rights in

those assets to Fate's SBA lender. KCF rejects both positions, but called off the planned pick-up of the equipment and furnishings to avoid a potential confrontation.

## THE DEFENDANTS' CONTINUING OPERATION OF A CANDY SHOP AT THE FORMERLY FRANCHISED LOCATION, AND UNAUTHORIZED USE OF THE KILWINS MARK

38.     Since the expiration of the Franchise Agreement, the defendants, or someone acting in concert with the defendants, have continued to operate a candy shop at the East New Haven store's location.

39.     The candy shop at the East New Haven location is identified as "Morgan's," but continues to use the KILWINS Mark and name in connection with the sale of candy, ice cream, and other confections.

40.     The candy shop at the East New Haven location is continuing to offer for sale products that are the same as or similar to those that KILWINS shops offer.

41.     The candy shop at the East New Haven location is offering products identified by the same names that KILWINS shops use. On information and belief, Fate is continuing to use, or permitting others to use, the KILWINS proprietary recipes, methods, and products in the operation of the candy shop at the East New Haven location.

42.     The candy shop at the East New Haven location continues to use the same distinctive trade dress that it used as a KILWINS shop, including the signage, promotional materials, product identification cards, equipment, and furnishings. There have been few material changes in the appearance of the candy shop at the East New Haven location since it ceased operating as a KILWINS shop.

43.     Fate is continuing to use the KILWINS mark and name to promote the candy shop at the East New Haven location on social media and in the yellow pages telephone directory.

44.     Fate is continuing to use the same telephone number at the candy shop at the East New Haven location that is used as a KILWINS shop.

45.     The operation of the candy shop at the East New Haven location creates the impression, contrary to fact, that it is still affiliated or connected with the KILWINS System.  The candy shop at the East New Haven location is essentially a knockoff of a KILWINS store, which Fate and Smith are operating or permitting to be operated in breach of the Franchise Agreement and in violation of the rights of KCF.

46.     KCF is being damaged by the defendants' conduct, and requires injunctive relief to protect the goodwill associated with its KILWINS Mark and the sanctity of its proprietary recipes, methods, and products.

## COUNT ONE
### (Trademark and Service Mark Infringement)

47.    KCF realleges each and every other paragraph of this Complaint.

48.    Fate and Smith's continued use of the KILWINS Mark without authorization or license from KCF is likely to cause confusion in the public mind concerning the source, affiliation, or sponsorship of goods and services being offered under the KILWINS Mark.

49.    Fate and Smith are willfully, intentionally, and knowingly using trademarks, service marks and designations that are identical to, substantially indistinguishable from, or confusingly similar to the KILWINS Mark in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.

50.    Fate and Smith's conduct is causing irreparable injury to KCF's reputation and goodwill, which will continue unabated unless enjoined by this Court.  In addition, Fate and Smith's conduct is causing monetary damage to KCF in an amount to be proven at trial.

## COUNT TWO
### (Federal Unfair Competition)

51.    KCF realleges each and every other paragraph of this Complaint.

52.    Fate and Smith's unauthorized use of the KILWINS Mark and trade dress constitutes false designation of origin, false or misleading descriptions of fact, and false or misleading representations of fact, which are likely to cause

confusion or mistake, or to deceive as to the affiliation, connection, or association between Fate and Smith, on the one hand and KCF, on the other hand, or as to the origin, sponsorship, or approval of the goods or services being offered by Fate and Smith, or as to KCF's approval of Fate and Smith's commercial activities.

53.     Fate and Smith's conduct violates section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

54.     Fate and Smith's conduct is causing irreparable injury to KCF's reputation and goodwill, which will continue unabated unless enjoined by this Court.  In addition, Fate and Smith's conduct is causing monetary damage to KCF, in an amount to be proven at trial.

## COUNT THREE
### (Common Law Trademark and Service Mark Infringement)

55.     KCF realleges each and every other paragraph of this Complaint.

56.     The KILWINS Mark is distinctive and has developed a secondary meaning in the public mind in that consumers have come to know and recognize the KILWINS Mark as identifying the operation of stores by KCF and its franchisees.  The KILWINS Mark has become known by the public as indicative of the goods and services provided by KCF and its franchisees at KILWINS stores.

57.     The public is likely to be confused, deceived or otherwise manipulated by Fate and Smith's unauthorized use of the KILWINS Mark.

Therefore, Fate and Smith's use of the KILWINS Mark without right, license, or authorization constitutes common law service mark infringement.

58.     Fate and Smith's conduct is causing irreparable injury to KCF's reputation and goodwill, which will continue unabated unless enjoined by this Court. In addition, Fate and Smith's conduct is causing monetary damage to KCF, in an amount to be proven at trial.

## COUNT FOUR
### (Common Law Unfair Competition)

59.     KCF realleges each and every other paragraph of this Complaint.

60.     Fate and Smith's conduct constitutes unfair competition under applicable state law.

61.     Fate and Smith's conduct is causing irreparable injury to KCF's reputation and goodwill, which will continue unabated unless enjoined by this Court. In addition, Fate and Smith's conduct is causing monetary damage to KCF, in an amount to be proven at trial.

## COUNT FIVE
### (Breach of Contract--Post-Expiration Obligations)

62.     KCF realleges each and every other paragraph of this Complaint.

63.     Fate and Smith have failed to cease using the KILWINS Mark and trade dress, as well as the confidential methods, procedures, and techniques

associated with the KILWINS System, in breach of Sections 14.1 and 14.2 of the Franchise Agreement.

62.     KCF has suffered and is continuing to suffer irreparable harm as a result of Fate and Smith's breach of Sections 14.1 and 14.2 of the Franchise Agreement. KCF is entitled to specific performance of the Franchise Agreement.

63.     KCF has also suffered monetary damage by Fate and Smith's breach of the Franchise Agreement in an amount to be proven at trial.

## COUNT SIX
### (Breach of Contract - Confidentiality Obligations)

64.     KCF realleges each and every other paragraph of this Complaint.

65.     In Section 8 of the Franchise Agreement, Fate and Smith agreed not to use or divulge any material designated confidential by KCF.

66.     KCF designated, *inter alia*, the recipes and methods for making fudge, caramel apples, candied popcorn and other products made and sold in KILWINS shops as confidential.

67.     On information and belief, Fate and Smith are using or divulging, or have divulged, KCF's confidential recipes and materials in the operation of the candy store located at the East New Haven location, in breach of Section 8 of the Franchise Agreement.

68.     The conduct set forth herein has caused and continues to cause irreparable harm and damage to KCF and the KILWINS Mark and System.  KCF is entitled to specific performance of Section 8 of the Franchise Agreement.

69.     In addition, KCF has sustained actual damages, costs, and attorneys' fees as a result of Fate and Smith's breach of the contractual confidentiality obligations in an amount that has yet to be determined.

## COUNT SEVEN
### (Breach of Contract—Covenant Not to Compete)

70.     KCF realleges each and every other paragraph of this Complaint.

71.     Fate and Smith's operation, or involvement with the operation, of candy store located at the East New Haven location constituts a breach of the post-term covenant contained in Section 15.3 of the Franchise Agreement.

72.     The conduct set forth herein has caused and continues to cause irreparable harm and damage to KCF and the KILWINS Mark and System, as Fate and Smith agreed it would in Section 15.9 of the Franchise Agreement.  KCF is entitled to specific performance of Section 15.3 of the Franchise Agreement.

73.     In addition, KCF has sustained actual damages, costs, and attorneys' fees as a result of Fate and Smith's breach of the post-term non-compete obligations in an amount that has yet to be determined.

## COUNT EIGHT
### (Breach of Contract—Encumbrance of Assets)

74.    KCF realleges each and every other paragraph of this Complaint.

75.    Fate and Smith's counsel has represented that the assets of their former KILWINS store are encumbered by an SBA loan.

76.    Under Section 12.4.1 of the Franchise Agreement, Fate and Smith agreed not to encumber any of the assets of the KILWINS shop. On information and belief, Fate and Smith's lender knew, or should have known, of the contents of Section 12.4.1 of the Franchise Agreement.

77.    KCF requires a declaration that it has superior rights in the assets of Fate and Smith to the SBA lender.

78.    To the extent that KCF is deemed not to have superior rights, Fate and Smith's conduct constitutes a breach of the Franchise Agreement for which KCF has no adequate remedy at law. In addition, KCF has suffered monetary damages for Fate and Smith's breach in an amount to be proven at trial.

## COUNT NINE
### (Breach of Contract—Failure to Convey Assets)

79.    KCF realleges each and every other paragraph of this Complaint.

80.    Under Section 14.9 of the Franchise Agreement, KCF had the option to purchase the equipment and furnishings of Fate and Smith's former KILWIN

shop on termination of the Franchise Agreement, to be exercised within 30 days of termination.

81.     KCF exercised its option to purchase in a timely fashion.

82.     Fate and Smith failed and refuse to convey the equipment and furnishings to KCF.  Instead, Fate and Smith are continuing to use the equipment and furnishings to operate a KILWINS knockoff at their formerly franchised location.

83.     KCF has suffered and is continuing to suffer irreparable harm as result of the failure and refusal of Fate and Smith to convey the equipment and furnishings of their formerly franchised KILWINS store to KCF.

## COUNT TEN
### (Unjust Enrichment)

84.     KCF realleges each and every other paragraph of this Complaint.

85.     Fate and Smith's unauthorized use of the KILWINS Mark and trade dress, and the equipment and furnishings to which KCF is entitled to possession, in operating their KILWINS knockoff shop, trading on the goodwill of the KILWINS System, use of KCF's confidential recipes and methods, and sale of products they expressly agreed not to sell has resulted in the unjust enrichment of Fate and Smith in an amount that has yet to be determined.

WHEREFORE, KCF demands entry of judgment in its favor:

A.    Preliminarily and permanently enjoining Fate and Smith, and all those acting in concert with them, including their agents, servants, employees, and attorneys, from:

(i)    using the KILWINS Mark in connection with the advertising, promotion or sale of any product or service;

(ii)    committing any other act that infringes the KILWINS Mark or otherwise unfairly competes with KCF or the KILWINS System;

(iii)    continuing to breach the confidentiality provisions of the Franchise Agreement;

(iv)    continuing to breach the post-termination requirements of the Franchise Agreement;

(v)    continuing to breach the post-termination covenant against competition for a period of one year from the date of the judgment; and

(vi)    failing to convey to KCF the furnishing and equipment used in their formerly franchised KILWINS shop.

B.    Declaring that KCF has superior rights to the equipment and furnishings in Fate and Smith's formerly franchised KILWINS shop to their SBA lender.

C.    Ordering Fate and Smith to file with the Court and serve on counsel for KCF, within five (5) calendar days after service of any injunction issued herein,

a written report setting forth in detail, under oath, the manner and form in which they have complied with such injunction;

D. Awarding KCF, pursuant to 15 U.S.C. § 1117, (a) Fate and Smith's profits, (b) KCF's damages, and (c) the costs of the action;

E. Awarding KCF treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a) and (b);

F. Awarding KCF its damages arising from the defendants' breaches of contract;

G. Awarding KCF its attorneys' fees, as authorized by the Franchise Agreement, and

H. Awarding KCF such other and further relief as the Court may deem appropriate.

Respectfully submitted,

s/ James C. Rubinger
James C. Rubinger
PLAVE KOCH PLC
12005 Sunrise Valley Drive
Suite 200
Reston, VA  20191-3404
Telephone: (703) 774-1208
Facsimile: (703) 774-1201
Email: jrubinger@plavekoch.com

Attorneys for Plaintiff
KILWINS CHOCOLATES FRANCHISE,
INC.

October 13, 2015